# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | * * * | CIVIL NO. 4:22-cv-00071-SMR-SBJ |
| Plaintiff, | * * | |
| v. | * * | |
| CAMBRIDGE INVESTMENT RESEARCH ADVISORS, INC. and CAMBRIDGE INVESTMENT RESEARCH, INC., | * * * * * | ORDER |
| Defendants. | * * | |

## I. INTRODUCTION

The United States Securities and Exchange Commission ("SEC") brought this action against Cambridge Investment Research Advisors, Inc. ("CIRA") and Cambridge Investment Research, Inc. ("CIRI") (collectively "Defendants"). Within its Complaint, the SEC contends defendant CIRA repeatedly breached its fiduciary duty to its advisory clients by failing to disclose material conflicts of interest, including that some investment choices generated additional revenue for its affiliate CIRI and allowed CIRA to avoid paying fees. Dkt. 1 ¶ 3. As alleged by the SEC, "CIRA and CIRI, acting as CIRA's affiliated broker-dealer, collectively benefited by millions of dollars as a result of CIRA breaching its fiduciary duty and defrauding its clients." *Id.* ¶ 5. The SEC asserts CIRA violated the Investment Advisers Act of 1940 and seeks injunctive relief, monetary penalties, and disgorgement of all ill-gotten gains. *Id.* ¶ 14. In answer to the complaint, Defendants deny the alleged violations and assert several affirmative defenses. Dkt. 9.

Now before the Court is Defendants' Motion to Compel Discovery and Deposition Responses (Dkt. 95). Defendants request an order pursuant to Federal Rules of Civil Procedure 26

and 37 compelling the SEC "to provide full and accurate discovery responses to Defendants' discovery and deposition requests surrounding two critical topics." *Id*. p. 1. As set forth in a supporting Memorandum (Dkt. 96), Defendants contend "[t]he SEC continues to stonewall Defendants' basic inquiry into the central issue in this matter, *i.e.*, precisely what is required under the standard the SEC alleges Defendants violated." *Id*. p. 2. From Defendants' perspective, "[t]he SEC alleges Defendants did not comply with industry standards, yet refuses to define or identify the very standards with which Defendants needed to comply." *Id*. Defendants describe two main categories of information as being at issue: (1) "general guidance" including "applicable rules and regulations governing conduct required by Defendants" and "disgorgement and application of *Liu* [*v. SEC*, 140 S.Ct. 1936 (2020)]"; and (2) "prior interactions between the parties" including "CIRA's prior examinations" and "CIRA's self-reporting under the Share Class Disclosure Initiative." *Id*. According to Defendants, "the SEC has blocked" discovery into those matters as sought by Defendants through requests for admissions, requests for production of documents and deposition questions. *Id*.

The SEC opposes the motion and maintains it "has repeatedly articulated the applicable standards." Dkt. 100 p. 2. The SEC emphasizes it has produced "tens of thousands of pages of additional documents related to its prior examinations of [CIRA], including extensive handwritten notes by SEC examination staff during those examinations . . .; (b) made available SEC examination staff for individual depositions . . .; and (c) made available four Rule 30(b)(6) deposition designees, whom Defendants ultimately deposed over two days about dozens of broad, sweeping topics covering three prior examinations of CIRA, the SEC's Share Class Selection Disclosure Initiative investigation of CIRA ("SCSDI Investigation"), and this litigation." *Id*. pp. 1-2. Contrary to Defendants' assertion of being stonewalled, the SEC maintains it "has repeatedly articulated the applicable standards" as sought by Defendants. *Id*. p. 2.

2

From the SEC's perspective, Defendants are seeking privileged materials the SEC has appropriately withheld:

> Defendants want general, internal SEC legal analysis concerning the calculation of disgorgement prepared by SEC attorneys for SEC attorneys in its Enforcement Division in the wake of the Supreme Court's *Liu v. SEC* decision. They want testimony about internal training, manuals and the like created by and used within the confines of the SEC's examination program. And they want the examination staff's internal deliberations, and analysis of CIRA data, materials, and interviews of its personnel. All of this material is protected by the array of privileges that apply to federal litigants generally, and government agencies specifically. Any marginal relevance of the SEC's internal information is outweighed by the need to protect from disclosure the SEC's internal deliberations, communications, and work product.

*Id.* p. 2. The SEC further contends Defendants improperly want the SEC to admit or deny legal conclusions within the requests for admissions and individually log thousands of internal emails from prior SEC examinations and investigations of CIRA within the SEC's privilege log. *Id.* pp. 2-3. The SEC asserts "doing so would be unduly burdensome and not proportional to the needs of the case, particularly given the inherently privileged nature of these communications." *Id.* p. 3.

In reply, Defendants insist they are entitled to the discovery at issue which "seeks information that is both relevant and essential to Defendants' defense":

> 1. The laws, rules, regulations, or industry standards (the "Laws") are relevant to determining the Defendants liability, as well as any disgorgement or civil money penalties; and
>
> 2. The facts relating to the conduct of the SEC staff and the communications between the SEC and Defendants in connection with both previous SEC examinations of CIRA and CIRA's voluntary self-reporting under the SEC's Share Class Selection Disclosure Initiative are relevant.

Dkt. 102 p. 1. From Defendants' perspective, "[t]he SEC's argument that Defendants are seeking 'admissions of law' is disingenuous and improperly equates 'admissions of law' with requests to admit applications of law to fact or opinions related to applications of law to fact." *Id.* Defendants maintain they "are asking nothing more than that the SEC disclose the basis for its claims and

identify the standards by which it intends to ask the trier of fact to evaluate Defendants' conduct." *Id.* Defendants further argue the SEC's withholding of documents "based on relevancy (which is not permitted) and privilege (without providing sufficient information to adjudicate) improperly interferes with Defendants' ability to adequately defend this matter." *Id.* pp. 1-2.

The Court considers the motion to be fully submitted. Oral argument by counsel is not necessary. L.R. 7(c). For the reasons which follow, the motion is denied.

## II. COURT'S DECISION

The Federal Rules of Civil Procedure govern the procedure in all civil actions before this Court, including the discovery process. Pursuant to Rule 26(b)(1), and unless otherwise limited by court order, the scope of discovery in general is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Subsection 26(b)(2) provides for certain limitations on discovery, including the following mandatory requirement:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

The procedural rules of discovery "should be construed, administered, and employed by

4

the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Similarly, as instructed by the Eighth Circuit, "'[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.'" *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment). Here, the Court has considered all arguments asserted by both parties in their submissions and weighed the proportionality of the discovery to the needs of the case under the asserted claims and defenses at issue. As framed by the parties, the discovery disputes arise from Defendants' requests for admission, requests for production of documents, and deposition questions, which are addressed in turn.

**A. Requests for Admission**

Defendants served the SEC with a set of requests for admission consisting of 81 separate requests to which the SEC responded. Dkt. 95-7, 95-9. In response to Request Nos. 1-3, 9-18, 25, and 36, the SEC objected because the request seeks admission of a hypothetical legal conclusion not tied to the specific facts of this case. Dkt. 95-9. The SEC also objected to certain of those requests as being vague and ambiguous. *Id.* Defendants dispute the SEC's objections and ask the Court to order the SEC to specifically admit or deny each request. Dkt. 96 pp. 5-9. In the Court's opinion, upon review of the requests at issue, the SEC's objections are justified.

"A party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1). The following rules govern the responding party's answers and objections:

> Answer. If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a

5

> party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.
>
> Objections. The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.

Fed. R. Civ. P. 36(a)(4),(5). "The requesting party may move to determine the sufficiency of an answer or objection." Fed. R. Civ. P. 36(a)(6). "Unless the court finds an objection justified, it must order that an answer be served." *Id*.

The requests at issue here as drafted by Defendants are similar in format. As examples, Request Nos. 1-3 seek the following admissions:

> 1. There was no law, rule, or regulation in effect during the Relevant Time Period which prohibited the receipt of Revenue Sharing payments by an SEC registered investment adviser ("RIA").
>
> 2. There was no law, rule, or regulation in effect during the Relevant Time Period which prohibited the payment of Revenue Sharing by a Clearing Firm to an RIA.
>
> 3. There was no law, rule, or regulation in effect during the Relevant Time Period which prohibited the payment of Revenue Sharing by a mutual fund to an RIA.

Dkt. 95-7 p. 6. In the Court's opinion, the objections to such requests as asserted by the SEC are justified and sufficient. The requests seek admissions of vague, ambiguous hypothetical legal conclusions with insufficient specified facts. As such, an admission or denial would be susceptible to multiple interpretations. And it would be unfair to compel the SEC to attempt to qualify an answer given the ambiguous, factually unspecified nature of the requests.

Defendants contend the requests are "purely factual; they do not seek a pure legal conclusion, nor do they seek an interpretation or clarification of the law." Dkt. 96 p. 5. The Court simply disagrees. The requests for admission do not "relate solely to the discrete facts of the matter" as argued by Defendants. *Id*. p. 7. Instead, the requests as written are vague, ambiguous

6

hypotheticals open to differing interpretations if merely admitted or denied. As such, contrary to Defendants' assertion, the requests as drafted do not "serve to narrow and sharpen the issues." *Id.* p. 9.

In that regard, the Court finds Defendants' argument suggesting the SEC has not identified "the specific laws, rules, or regulations" at issue is somewhat disingenuous. Notably, the SEC's Complaint asserts "CIRA violated Sections 206(2) and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(2) and 80b-6(4)], and Rule 206(4)-7 thereunder [17 C.F.R. § 275.206(4)-7]." Dkt. 1 ¶ 14. In addition, Count I entitled "Violation of Section 206(2) of the Advisers Act" and Count II entitled "Violation of Section 206(4) of the Advisers Act & Rule 206(4)-7 Thereunder" also cite to the sections of the Advisers Act allegedly violated by Defendants. *Id.* ¶¶ 112-20. The Complaint also specifies the Act's section under which the SEC requests a civil penalty. *Id.* p. 30. And contrary to the purported lack of identification by the SEC, Defendants themselves explicitly reference the alleged violations of Section 206(2) and Rule 206(4)-7 within their own supporting memorandum. Dkt. 96 p. 3.

For those reasons, Defendants' request for an order compelling the SEC to specifically admit or deny Request for Admission Nos. 1-3, 9-18, 25, and 36 is denied.

**B. Requests for Production of Documents**

Defendants' motion as to requests for production of documents focuses on two categories: requests seeking documents from prior CIRA examinations and requests for documents regarding internal guidance on disgorgement calculations. Dkt. 96 pp. 9-15. As to prior examinations, Defendants contend the SEC produced interview notes which "contain excessive and unnecessary redactions that make it prohibitively difficult for Defendants to plausibly determine whether the privilege assertions are overbroad." *Id.* p. 9. Defendants further contend redactions based on relevancy, as opposed to a privilege, are improper. *Id.* And as to internal guidance on disgorgement

7

calculations, Defendants contend the SEC is improperly withholding all responsive documents based on privilege. *Id.* p. 14. In addition, Defendants assert the privilege log provided by the SEC is deficient regarding certain related entries. *Id.* pp. 10-15. Defendants request that the Court order the SEC to produce the documents in question with redactions of only properly protected information with a revised privilege log and an accompanying explanatory affidavit which sufficiently sets forth the basis for any asserted privilege or other protection from discovery. *Id.*

According to the SEC, however, the redacted portions of the interview notes at issue "are comprised entirely of thoughts, mental impressions, opinions, and other information reflecting internal SEC deliberations—all of which are privileged." Dkt. 100 p. 5. In support, the SEC submitted a sworn declaration from Deputy Secretary J. Matthew DeLesDernier, stating:

> the Commission, through its Deputy General Counsel for General Litigation, to whom it has delegated the authority to assert the governmental privileges, and who gave personal consideration to the matter, determined on behalf of the Commission to assert a claim of governmental deliberative-process privilege over the redacted portions of interview notes made by SEC examiners during examinations of Cambridge Investment Research Advisors, Inc. ("CIRA"), in 2016 and 2019, certain internal disgorgement guidance identified by staff in the Division of Enforcement, testimony about how examiners used and applied internal exam guidance or about their decisions regarding what information to seek during examinations, and samples of internal SEC emails from exams of CIRA in 2015, 2016, and 2019, from a Share Class Selection Disclosure Initiative investigation of CIRA, and from the underlying investigation that led to this litigation (D-08321 and C-08619).
>
> The deliberative-process privilege is being asserted as to the documents (or portions of documents) described above because they reflect examiners' and attorneys' predecisional deliberations regarding future Commission decisions, or those of other staff working under their direction. The production of these documents would likely have an inhibiting effect upon the Commission and its staff members and thus would have a detrimental effect on the Commission's decision-making process. Similarly, the requested testimony would reflect examiners' predecisional deliberations regarding future Commission decisions. Providing the testimony would likely have an inhibiting effect upon the Commission and its staff members and thus would have a detrimental effect on the Commission's decision-making process.

Dkt. 100-7 ¶¶ 3-4. The SEC also submitted sworn declarations from Jeffrey A. Shank, an Assistant

Regional Director (Dkt. 100-8), and Natasha Vij Greiner, the Deputy Director and National Associate of the Investment Adviser and Investment Company Examination Program of the SEC's Division of Examinations (Dkt. 100-9). Both declarations address the documents and information at issue, and the basis for the asserted privilege, in a fairly detailed manner. The SEC also submitted examples of the interview notes at issue containing the "most redactions" (Dkt. 100-2) for review by the Court.

The SEC maintains the interview notes "contain minimal, narrowly tailored redactions" and disputes Defendants' assertion the notes contain "excessive and unnecessary redactions that make it prohibitively difficult for Defendants to plausibly determine whether the privilege assertions are overbroad." Dkt. 100 p. 6. As argued by the SEC:

> the only redactions concern the examiners' personal thoughts and mental impressions stemming from either such interviews or internal SEC discussions. (*See* DeLesDernier Decl. at ¶¶ 3-4). They are thus protected by the deliberative process privilege, which protects internal agency communications and papers exchanged as the agency contemplates taking action. *See*, *e.g.*, *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785, 209 L. Ed. 2d 78 (2021) ("To protect agencies from being forced to operate in a fishbowl, the deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated") (cleaned up); *Stephens Produce Co., Inv. v. NLRB*, 515 F.2d 1373, 1376 (8th Cir. 1975) (applying privilege to "informal impressions" of an NRLB investigator); *King v. IRS*, 684 F.2d 517, 519 (7th Cir. 1982) ("The deliberative process privilege exempts all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.") (cleaned up). The deliberative process privilege allows government agencies to "freely explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." *Missouri ex rel. Shorr v. U.S. Army Corps. Of Eng'rs*, 147 F.3d 708, 710 (8th Cir. 1998); see also *Moye, O'Brien, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277-78 (11th Cir. 2004) (an agency's audit reports, internal memoranda, notes and work papers are protected by the deliberative process privilege). Information is protected by the privilege when it is (a) pre-decisional, that is, designed to assist agency decisionmakers; (b) contains the personal opinions of the writer rather than agency policy; and (c) is "deliberative," such that its disclosure would expose the agency's decision-making process and thus discourage candid discussion, and undermine the agency's ability to perform its functions. *Shorr*, 147 F.3d at 710.

*Id.* pp. 6-7. From the perspective of the SEC, the privilege assertions as to the redactions in the interview notes are proper and "entirely consistent with the Court's discovery order permitting the SEC to withhold privileged information." *Id.* p. 8. It is also noted some interview notes which do not contain privileged information were produced in their entirety. *Id.* p. 8, n. 4.

The SEC also disputes Defendants' assertion that its privilege log is deficient. The SEC submitted its privilege log (Dkt. 100-1) for review by the Court and asserts the limited categorical entries to which Defendants complain "are appropriate given the undue burden of logging thousands of emails individually, and since such an exercise would be of no material benefit given their inherently privileged nature." Dkt. 100 p. 5. The SEC emphasizes it "has already produced to Defendants thousands of pages of emails sent between the SEC and third parties during the prior examinations and investigations of CIRA, along with tens of thousands of pages of other documents obtained by the SEC from third parties or public sources." *Id.* p. 8, n. 5. The SEC contends providing the detailed privilege log entries as sought by Defendants for the withheld materials at issue would be unduly burdensome given the voluminous documents being described:

> The SEC's internal communications are massive, with over 3,875 emails (inclusive of email chains and potentially duplicates) generated just by the SEC lawyers and an industry expert involved in the SCSDI and underlying investigations, and another 3,372 emails (inclusive of email chains and potentially duplicates) generated by SEC examiners, lawyers, and supervisors in the three prior CIRA examinations. (See Attached Declaration of Jeffrey A. Shank at ¶¶ 11-13).

*Id.* pp. 8-9.

Turning to Defendants' request for documents regarding internal guidance on disgorgement calculations, the SEC insists "[s]uch documents are unquestionably privileged." *Id.* p. 5. As explained by Assistant Regional Director Shank, the SEC's "Division of Enforcement has drafted and circulated training materials, presentations, litigation strategies, legal theories, and other general Internal Disgorgement Guidance–particularly in the wake of the *Liu v. SEC*, 140

S.Ct. 1936 (2020) ruling–in anticipation of its ongoing and future litigation." Dkt. 100-8 ¶ 17. As further explained: "[t]he guidance was created by SEC attorneys and directed at SEC attorneys and accountants and other staff working with the attorneys and at their direction and control [and] includes mental impressions, conclusions, arguments, strategies, and legal theories and opinions that Division of Enforcement attorneys should adopt or consider regarding disgorgement in particular situations that may arise in the course of both ongoing and anticipated litigation." *Id.* ¶¶ 18-19. As such, the SEC contends this internal disgorgement guidance is protected by the work product doctrine, attorney-client privilege, and deliberative process privilege. Dkt. 100 pp. 11-12.

      The SEC represents it has provided Defendants with all non-privileged information related to the SEC's calculation of disgorgement including underlying documents supporting the SEC's anticipated disgorgement calculations which were derived from Defendants' own documents and those of third parties. *Id.* p. 14. In addition, the SEC notes it provided Defendants with its expert report addressing the preliminary disgorgement calculations for this case. *Id.* pp. 5-6, 14. And on a final point, in the SEC's view, the request for production at issue does not seek facts specifically related to this present case and is "patently overbroad and unduly burdensome" in requesting "[a]ll documents reflecting any internal guidance or directives, for the period July 1, 2020 to the present, with respect to the calculation or determination of disgorgement." *Id.* pp. 11, 14. The SEC maintains it would take a "Herculean effort" to search the communications of its almost 4,500 employees across its divisions and regional offices "spanning hundreds of SEC enforcement actions" over a two-and-a-half-year period to comply with the request as drafted by Defendants. *Id.* p. 14.

      In the opinion of the Court, the SEC's arguments as to issues related to the requests for production of documents and its assertions of privilege are valid and persuasive on all points. The Federal Rules of Civil Procedure set forth specific requirements for a party claiming privilege or

protecting trial-preparation materials in discovery:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

> The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.

Fed. R. Civ. P. 26(b)(5)(A) advisory committee's note to 1993 amendment.

Here, the SEC has satisfied the requirements of Rule 26(b)(5)(A) in redacting certain information and withholding certain documents in response to Defendants' requests seeking documents from the prior CIRA examinations and documents regarding internal guidance on disgorgement calculations. The SEC has provided a sufficient basis in fact and law for the redactions to the interview notes which appear, based on the examples provided, to be properly limited and not "excessive and unnecessary" as asserted by Defendants. The SEC has also provided a sufficient basis in fact and law for withholding documents based on privilege regarding internal guidance on disgorgement calculations. The SEC provided Defendants an overall fairly detailed privilege log with updates, Dkt. 100-1, and has now supported its assertions of privilege with facts set forth within sworn declarations, Dkt. 100-7, 100-8, 100-9, and law set forth within its memorandum, Dkt. 100. Further revisions to the SEC's privilege log are not necessary and, from the Court's perspective, to compel the SEC to do so to the extent requested by Defendants would

12

be unduly burdensome and unfairly disproportional to the needs of this case under the asserted claims and defenses at issue. Under the present record, Defendants have not shown "the SEC has blocked" discovery and, instead, it appears the SEC has complied with its discovery obligations by producing responsive materials while withholding certain, limited information and documents as privileged based on fact and law.

For those reasons, based on the record submitted to the Court, Defendants' request for an order compelling the SEC to produce documents with revised redactions, a revised privilege log, or additional documents is denied.

**C. Deposition Questions**

Defendants contend "the SEC repeatedly objected to basic, but critical inquiries by Defendants during [d]epositions on the grounds of deliberative process." Dkt. 96 p. 15. In Defendants' view, "[t]hese objections have been randomly utilized, consistently overbroad, and their uneven application is inconsistent with prevailing Eighth Circuit law that protects the discovery process from being hampered by objections whose sole purpose is to evade relevant questioning." *Id.* (citing *Shorr*, 147 F.3d at 710; *Stephens Produce*, 515 F.2d at 1376-77; *Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 245 F.R.D. 393, 396 (S.D. Iowa 2007)). "Defendants take issue with the SEC's overbroad use of the [deliberative process privilege] objection in several distinct areas including agency opinions, procedures, and interpretations, and objections based solely on factual questions." *Id.* pp. 16-20.

Specifically, Defendants refer to three inquiries during a Rule 30(b)(6) deposition of Assistant Regional Director Shank of whether he was prepared to testify as to three topics propounded by Defendants: "an analysis of the staff of disclosures made by CIRA", "manuals, checklists, training materials specific to revenue sharing disclosures, mutual fund share class selection, disclosure of forgivable loans, wrap account conversions, or requests for waivers of

13

investment minimums", and "internal guidance or directives relate[d] to the calculation of disgorgement including guidance or directives referring to the impact of the decision in Liu versus SEC." *Id.* p. 17. The SEC's attorney objected to each inquiry based on the deliberative process privilege. *Id.* Defendants also refer to the following question asked during a deposition of Nathan Haselhorst:

> Q. During the course of the examination, did you or anyone from the staff perform any analysis as to what mutual fund share classes were being used by the CIRA financial professionals?

Dkt. 95-5. The SEC's attorney objected based on the deliberative process privilege. *Id.* And lastly, Defendants refer to the following questions asked during a deposition of Anne Salvadore:

> Q. . . . Do you know as part of the staff's review of CIRA's wrap fee programs whether the staff sought any information regarding the process for mutual fund share class selection in any of those programs? A. We did not. Q. Why not?
> \* \* \*
> Q. Do you recall whether as part of the review of the wrap fee programs you sought any information related to the impact of any revenue sharing CIRA was receiving on the costs of those programs? A. We did not. Q. Why not?

Dkt. 95-6. The SEC's attorney objected after each "Why not?" based on the deliberative process privilege. *Id.*

Defendants contend the SEC's assertion of the privilege during the depositions "prohibits the Defendants from understanding the bases for the SEC's claim and hamstrings Defendants' potential defenses." Dkt. 96 pp. 16-17, 18-19. As argued by Defendants:

> As an initial matter, whether an analysis was performed by the SEC is a simple fact, not a pre-decisional and deliberative document containing Plaintiff's mental impressions subject to a deliberative process objection. Further, questions as to what analysis was performed, by whom, and what resulted from the analysis similarly fall outside the privilege. This point is fully illustrated if the answer to the questions posed is no. If no analysis was performed, no privilege could possibly apply. Plaintiff seeks to again cloak highly relevant information in an overbroad assertion of privilege.

*Id.* p. 19. Defendants insist "the Court should order the SEC to answer the questions posed during

the [d]epositions." *Id.* p. 20.

In opposition, the SEC disputes Defendants' characterization of the SEC's privilege assertions as "random" and "uneven." Dkt. 100 p. 15. And contrary to the contention it was trying to "evade relevant questioning," the SEC maintains it "provided hours of substantive testimony, fully responding to the questions Defendants posed and invoking privilege only when absolutely necessary." *Id.* The SEC emphasizes that "[o]f the hundreds of answers the SEC witnesses offered over the course of the four separate depositions taken over five days, . . . Defendants complain of only five." *Id.*

As to those specifically, the SEC contends testimony about internal analyses by the SEC staff and internal SEC exam manuals, policies, procedures, and training as inquired into during the Rule 30(b)(6) deposition are topics protected by the deliberative process privilege. *Id.* pp. 15-19. The SEC further argues:

> Defendants insist such information will shed light on "what was known to the SEC during its investigations and inquiries into the factual bases for its claim that Defendants violated federal law." (Mot. at 18). That's nonsensical. What the SEC knew and when it knew it has nothing to do with this case. *See, e.g.*, *SEC v. Keener*, 580 F.Supp.3d 1272, 1290-91 (S.D. Fla. 2022) (only external SEC guidance relevant to defendant's defenses). Even if the SEC's mindset was somehow relevant, the Internal Exam Guidance would shed no light on it, since the information Defendants seek is general in nature, having nothing to do with what the SEC knew about CIRA's practices or disclosures. For the same reasons, the Internal Exam Guidance is not relevant to the "factual bases for [the SEC's] claim that Defendants violated federal law." (Mot. at 18).
>
> Defendants emphasize that what they are really seeking is "whether there was any guidance, *either published or communicated to Defendants directly*, on seeking [minimum investment] waivers." (Mot. at 18) (emphasis added). That's not an accurate characterization of Defendants discovery. Seeking published guidance or communications with Defendants is wholly distinct from, and unrelated to, their request for information about the SEC's internal guidance and training. The fact that Defendants' relevancy argument focuses on public guidance or direct communications with Defendants fundamentally undermines their claim as to the relevance of internal SEC documents.
>
> Regardless, the SEC is not withholding information based on lack of relevancy, but

> rather on privilege grounds. Testimony about how examiners used and applied the Internal Exam Guidance is protected by the deliberative process privilege and therefore not subject to discovery. Any such testimony would reflect deliberations about agency decisions on issues that arise in SEC examinations. (DeLesDernier Decl. at ¶¶ 3-4). . . .
>
> * * *
>
> As addressed in the Declaration of Natasha Vij Greiner, testimony regarding the Internal Exam Guidance would have a significant, detrimental impact on the ability of the Division of Examinations to conduct its exams. (Greiner Decl. at ¶¶ 4-6). Further, because the Division of Examinations can refer matters to the Enforcement Division (Shank Decl. at ¶ 3), disclosure of exam techniques and procedures could hinder future SEC investigations. Defendants have offered no justification for departing from established law protecting such internal guidance.

*Id.* pp. 16-19.

As to the Haselhorst deposition, the SEC acknowledges "it initially objected to a question about whether anyone from the exam staff performed an analysis as to what mutual fund share classes were being used by the CIRA financial professionals" but indicates "[t]he SEC has answered this question." *Id.* p. 19. In the SEC's view, "this issue is moot." *Id.* And as to the Salvador deposition, the SEC contends the inquiry "Why not?" "seeks the rationale behind the exam team's decisions [which] falls comfortably within the deliberative process privilege." *Id.* p. 20.

In reply on the matter of the deposition testimony, Defendants argue as follows:

> The SEC asserts the [deliberative process privilege] in its refusal to respond to certain questioning during the deposition of Anne Salvador. Although the SEC contends Defendants' questions seek the rationale behind the SEC's decisions, the questions require only a factual response as to whether an analysis was or was not performed and, if it was performed, by whom. If no analysis was performed, then the [deliberative process privilege] cannot possibly apply. These questions do not implicate any pre-decisional or deliberative analysis that [deliberative process privilege] is meant to protect.

Dkt. 102 p. 5. Defendants request the Court to compel the SEC "to provide full and accurate discovery responses to . . . unanswered depositions questions." *Id.*

In the opinion of the Court, the SEC's arguments are again valid and persuasive as to the

16

issues related to the deposition testimony and its assertions of privilege, with one limited exception. The parties have made divergent representations as to whether the SEC has answered "whether an analysis was or was not performed" as inquired during depositions. The Court has no basis to resolve this disclarity under the present record. As such, counsel for the parties must confer in good faith to address the issue.

Otherwise, the objections asserted by the SEC in response to the three inquiries as propounded by Defendants' counsel during the Rule 30(b)(6) deposition of Assistant Regional Director Shank appear to be appropriate assertions of the deliberative process privilege given the particular circumstances, claims and defenses at issue in this litigation. Likewise, the objections asserted by the SEC in response to the two "Why not?" inquiries during the Salvador deposition appear to be appropriate assertions of the deliberative process privilege. Under the record submitted to the Court, Defendants have not presented sufficient reason or basis for compelling the SEC to provide further deposition testimony as to "unanswered depositions questions."

### III. CONCLUSION

As set forth above, Defendants' Motion to Compel Discovery and Deposition Responses (Dkt. 95) is hereby denied.

IT IS SO ORDERED.

Dated March 4, 2024.

_____
STEPHEN B. JACKSON, JR.
UNITED STATES MAGISTRATE JUDGE