UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                        Plaintiff,<br><br>      v.<br><br>CAMBRIDGE INVESTMENT RESEARCH ADVISORS, INC.,<br><br>                        Defendant, and<br><br>CAMBRIDGE INVESTMENT RESEARCH, INC.,<br><br>                        Relief Defendant. | No. 4:22-cv-00071-SMR-SBJ |

**CONSENT OF CAMBRIDGE INVESTMENT RESEARCH ADVISORS, INC. AND CAMBRIDGE INVESTMENT RESEARCH, INC.**

1. Defendant Cambridge Investment Research Advisors, Inc. ("CIRA") and Relief Defendant Cambridge Investment Research, Inc. ("CIRI") acknowledge having been served with the complaint in this action, have entered general appearances, and admit the Court's jurisdiction over them and over the subject matter of this action.

2. Without admitting or denying the allegations of the complaint (except as provided herein in paragraph 13 and except as to personal and subject matter jurisdiction, which CIRA admits), CIRA hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

1

(a) permanently restrains and enjoins CIRA from violations of Sections 206(2) and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-7 thereunder;

(b) orders CIRA to pay disgorgement in the amount of $10,164,698, plus prejudgment interest thereon in the amount of $3,035,302;

(c) orders CIRA to pay a civil penalty in the amount of $1,800,000 under Section 209(e) of the Advisers Act; and

(d) orders CIRA to conduct a Defendant-administered distribution of the settlement proceeds as set forth in paragraph 5.

3. CIRA acknowledges that the civil penalty paid pursuant to the Final Judgment may be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. CIRA agrees to pay all costs incurred under any plan for the distribution of the disgorgement and civil penalty, including but not limited to any taxes owed by the fund, and all fees and expenses of any fund administrator, tax administrator, and/or experts retained. Regardless of whether any such Fair Fund distribution is made, the civil penalty shall be treated as a penalty paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, CIRA agrees that it shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on CIRA's payment of disgorgement in this action, argue that it is entitled to, nor shall it further benefit by, offset or reduction of such compensatory damages award by the amount of any part of CIRA's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, CIRA agrees that it shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Securities and Exchange Commission's ("Commission") counsel in this action

and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this action. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against CIRA by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

4. CIRA agrees that it shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that CIRA pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. CIRA further agrees that it shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that CIRA pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

5. CIRA undertakes to:

(i) Within fourteen (14) days of the entry of the Final Judgment, CIRA shall deposit $15,000,000 (the "Fair Fund") into an escrow account at a financial institution not unacceptable to the Commission staff and CIRA shall provide evidence of such deposit in a form acceptable to the Commission staff. The account holding the assets of the Fair Fund shall bear the name and the taxpayer identification number of the Fair Fund. If timely payment into the escrow account is not made, additional interest shall

accrue pursuant to SEC Rule of Practice 600 [17 C.F.R. § 201.600] and/or 31 U.S.C. § 3717.

(ii) CIRA shall be responsible for administering the Fair Fund and may hire a professional at its own cost to assist it in the administration of the distribution. The costs and expenses of administering the Fair Fund, including any such professional services, shall be borne by CIRA and shall not be paid out of the Fair Fund.

(iii) CIRA shall distribute from the Fair Fund an amount based on the financial harm to current and former CIRA advisory clients between January 1, 2014 and December 31, 2021, consisting of (a) the amount of excess fees paid by clients who purchased or held no-transaction fee mutual fund share classes that generated revenue sharing when a share class of the same fund was available to the client with a lower expense ratio; (b) the amount of reduced return for clients who purchased or held cash sweep money market funds that generated revenue sharing when a share class of the same fund, or a nearly identical fund, was available to the client with a higher return; and (c) the amount of excess fees paid by clients who were converted from a non-retirement, traditional non-wrap account to CIRA's WealthPort Wrap program and incurred higher fees than they would have had they not been converted (collectively "Affected Advisory Clients"). The distribution will be made pursuant to a disbursement calculation (the "Calculation") that will be submitted to, reviewed, and approved by the Commission staff in accordance with paragraph 5. To the extent the total amount of financial harm to Affected Advisory Clients exceeds the amount of the Fair Fund, CIRA will calculate and distribute a *pro rata* percentage of the Fair Fund to each Affected Advisory Client based on the client's *pro rata* financial harm during the

period. The Calculation shall be subject to a *de minimis* threshold. No portion of the Fair Fund shall be paid to any account in which CIRA, CIRI, or any of their current or former officers or directors has a financial interest.

(iv) CIRA shall, within ninety (90) days of the entry of the Final Judgment, submit the Calculation to the Commission staff for review and approval. At or around the time of submission of the proposed Calculation to the staff, CIRA shall make itself available, and shall require any third parties or professionals retained by CIRA to assist in formulating the methodology for its Calculation and/or administration of the distribution to be available for a conference call with the Commission staff to explain the methodology used in preparing the proposed Calculation and its implementation, and to provide the staff with an opportunity to ask questions. CIRA also shall provide the Commission staff such additional information and supporting documentation as the Commission staff may request for the purpose of its review. In the event of one or more objections by the Commission staff to CIRA's proposed Calculation or any of its information or supporting documentation, CIRA shall submit a revised Calculation for the review and approval of the Commission staff or additional information or supporting documentation within ten (10) days of the date that the Commission staff notifies CIRA of the objection. The revised Calculation shall be subject to all of the provisions set forth in paragraph 5.

(v) CIRA shall, within thirty (30) days of the written approval of the Calculation by the Commission staff, submit a payment file (the "Payment File") for review and acceptance by the Commission staff demonstrating the application of the methodology to each Affected Advisory Client. The Payment File should identify, at

a minimum: (1) the name of each Affected Advisory Client; (2) the net amount of the payment to be made, less any tax withholding; (3) the amount of any *de minimis* threshold to be applied; and (4) the amount of reasonable interest paid, if applicable. CIRA shall exclude from the Payment File all payments to payees that appear on the U.S. Treasury Department Specially Designated Nationals List.

(vi) CIRA shall, within thirty (30) days of the date the Commission staff approves the Payment File, notify Affected Advisory Clients of the settlement terms of the Final Judgment to each Affected Advisory Client via mail, email, or such other method not unacceptable to the Commission staff, together with a cover letter in a form not unacceptable to the Commission staff.

(vii) CIRA shall disburse all amounts payable to Affected Advisory Clients within ninety (90) days of the date the Commission staff approves the Payment File. CIRA shall notify the Commission staff of the date[s] and the amounts paid in the distribution.

(viii) If CIRA is unable to distribute or return any portion of the Fair Fund for any reason, including an inability to locate an Affected Advisory Client or a beneficial owner of an Affected Advisory Client's account or any other factors beyond CIRA's control, CIRA shall transfer any such undistributed funds to the Commission for transmittal to the United States Treasury subject to Section 21F(g)(3) of the Securities Exchange Act of 1934 once the distribution of funds is complete and before the final accounting provided for in subparagraph (xi) of this paragraph 5 is submitted to the Commission staff. Payment must be made in one of the following ways:

(a) CIRA may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(b) CIRA may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(c) CIRA may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

> Enterprise Services Center
> Accounts Receivable Branch
> HQ Bldg., Room 181, AMZ-341
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

(ix) Payments by check or money order must be accompanied by a cover letter identifying the payor as a Defendant in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Jeffrey Shank, Assistant Regional Director, Securities and Exchange Commission, 175 West Jackson Boulevard, Suite 1450, Chicago, IL 60604.

(x) A Fair Fund is a Qualified Settlement Fund ("QSF") under Section 468B(g) of the Internal Revenue Code ("IRC"), 26 U.S.C. §§ 1.468B.1-1.468B.5. CIRA agrees to be responsible for all tax compliance responsibilities associated with the Fair Fund's status as a QSF. These responsibilities involve reporting and paying requirements of the Fund, including but not limited to: (1) tax returns for the Fair Fund; (2) information return reporting regarding payments to Affected Advisory Clients, as required by applicable codes and regulations; and (3) obligations resulting from compliance with the Foreign Account Tax Compliance Act. CIRA may retain any professional services necessary. The costs and expenses of tax compliance, including any such

professional services, shall be borne by CIRA and shall not be paid out of the Fair Fund.

(xi) Within one hundred fifty (150) days after CIRA completes the disbursement of all amounts payable to Affected Advisory Clients, CIRA shall return all undisbursed funds to the Commission pursuant to the instructions set forth in this paragraph 5. CIRA shall then submit to the Commission staff a final accounting and certification of the disposition of the Fair Fund for the Commission to submit for Court approval, which final accounting and certification shall include, but not be limited to: (1) the amount paid to each payee, with the reasonable interest amount, if any, reported separately; (2) the date of each payment; (3) the check number or other identifier of the money transferred; (4) the amount of any returned payment and the date received; (5) a description of the efforts to locate a prospective payee whose payment was returned or to whom payment was not made for any reason; (6) the total amount, if any, to be forwarded to the Commission, which will present the Court with a recommendation for disposition of the funds; and (7) an affirmation that CIRA has made payments from the Fair Fund to affected investors in accordance with the Calculation approved by the Commission staff. The final accounting and certification shall be submitted under a cover letter that identifies CIRA and the file number of these proceedings to Jeffrey Shank, Assistant Regional Director, Securities and Exchange Commission, 175 West Jackson Boulevard, Suite 1450, Chicago, IL 60604. CIRA shall provide any and all supporting documentation for the accounting and certification to the Commission staff upon its request and shall cooperate with any

    additional requests by the Commission staff in connection with the accounting and certification.

(xii) The Court may extend any of the procedural dates set forth in this paragraph 5 for good cause shown. Deadlines for dates relating to the Fair Fund shall be counted in calendar days, except if the last day falls on a weekend or federal holiday, the next business day shall be considered the last day.

6. CIRA waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

7. CIRA waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

8. CIRA and CIRI enter into this Consent voluntarily and represent that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce CIRA or CIRI to enter into this Consent.

9. CIRA and CIRI agree that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

10. CIRA will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

11. CIRA waive service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to CIRA of its terms and conditions. CIRA further agree to provide counsel for the Commission, within thirty

days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that CIRA has received and read a copy of the Final Judgment.

12. Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against CIRA and CIRI in this civil proceeding. CIRA and CIRI acknowledge that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. CIRA and CIRI waive any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. CIRA further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, CIRA understands that it shall not be permitted to contest the factual allegations of the complaint in this action.

13. CIRA understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or Defendant to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings," and "a refusal to admit the allegations is equivalent to a denial, unless the defendant or Defendant states that he neither admits nor denies the allegations."

As part of CIRA's agreement to comply with the terms of Section 202.5(e), CIRA: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that CIRA does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations, without also stating that CIRA does not deny the allegations; and (iii) upon the filing of this Consent, CIRA hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If CIRA breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects CIRA's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

14.     CIRA represents that it is in possession of the amounts subject to disgorgement referenced above.

15.     Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), CIRA and CIRI hereby stipulate to the SEC's voluntary dismissal, with prejudice, of Count III of the SEC's Complaint against Relief Defendant CIRI. CIRA and CIRI further acknowledge that a stipulation of dismissal signed by all parties will be filed with the Court upon entry of the Final Judgment.

16.     CIRA and CIRI hereby waive any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by CIRA or CIRI to defend against this action. For these purposes, CIRA and

CIRI agree that they are not a prevailing party in this action since the parties have reached a good faith settlement.

17. CIRA agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

18. CIRA agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: March 6, 2025          Cambridge Investment Research Advisors, Inc.

By: _____
Richard H. Kuhlman
Chief Legal Officer
1776 Pleasant Plain Road
Fairfield, Iowa 52556

Dated: March 6, 2025          Cambridge Investment Research, Inc.

By: _____
Richard H. Kuhlman
Chief Legal Officer
1776 Pleasant Plain Road
Fairfield, Iowa 52556

On March 6 2025, Richard H. Kuhlman, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent with full authority to do so on

behalf of Cambridge Investment Research Advisors, Inc. and Cambridge Investment Research, Inc. as their Chief Legal Officer.

_____
Notary Public
Commission expires: 9-18-2027

Approved as to form:

_____
Jeffrey Kalinowski
Norton Rose Fulbright US LLP
7676 Forsyth Blvd., Suite 2230
St. Louis, Missouri 63105
314-505-8823
Attorney for Defendants

## CORPORATE RESOLUTION

I, Richard H. Kuhlman, the Chief Legal Officer of Cambridge Investment Research Advisors, Inc., and Cambridge Investment Research, Inc., corporations duly organized and existing under the laws of the State of Iowa, hereby certify that on March 6 2025, the Board of Directors of Cambridge Investment Research Advisors, Inc. and Cambridge Investment Research, Inc., passed a resolution authorizing me to execute the foregoing Consent, and authorizing me to execute such documents in furtherance of that Consent as are required, substantially in the form of the foregoing Consent, on behalf of Cambridge Investment Research Advisors, Inc. and Cambridge Investment Research, Inc.

Dated: 3/6/25

Richard H. Kuhlman